[No. 45350.   En Banc.   November 16, 1978.]

WASHINGTON STATE BAR ASSOCIATION, *Respondent,* v.
GREAT WESTERN UNION FEDERAL SAVINGS
AND LOAN ASSOCIATION, ET AL,
*Appellants.*

*Johnson, George, Hull & Porter, P.S.,* by *Harold D. Johnson* and *Larry Setchell,* for appellants.

*Kain & Snow,* by *George A. Kain,* for respondent.

*James A. Furber* on behalf of Washington Savings League, amicus curiae.

STAFFORD, J.—Appellants Great Western Union Federal Savings and Loan Association and Kathleen Kelley (hereinafter referred to collectively as Great Western) appeal a judgment which declares certain of their activities to be the unauthorized practice of law. Respondent Washington State Bar Association (Bar Association) cross–appeals the trial court's refusal to grant injunctive relief. We affirm in part and reverse in part.

Great Western, a federally chartered savings and loan association, lends money to purchasers of real property in exchange for obtaining a security interest in the property purchased. Purchasers may obtain either a new loan or assume an existing loan owed to Great Western by the seller of the property.

Great Western also provides a "closing" service to the purchaser and seller. As a part of this service, Great Western selects and completes legal documents which it deems necessary and appropriate to close both the loan between it and the purchaser and the sale between the purchaser and seller. In this respect, Great Western selects and completes such forms as promissory notes, deeds of trust, statutory warranty deeds, 1 percent real estate excise tax affidavits, agreements modifying deeds of trust and promissory notes, seller's letter of closing instructions,[1] and advance disclosure statements required by the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2601 *et seq.* Great Western then presents the documents needing signatures to the parties, states the title of each document, requests and obtains signatures on documents. Additionally, Great Western furnishes its borrower (the purchaser) with a loan commitment letter indicating that the sale and loan will be

---

[1]Great Western utilizes a form for the "seller's letter of closing instructions." When signed by the seller *as prepared by Great Western,* it purports to relieve Great Western of any liability surrounding the sale transaction. It provides:

We acknowledge hereby that you are acting solely upon the foregoing instructions and not as our attorney, that we are not relying upon Great Western Union Federal Savings and Loan Association to any extent to interpret or insure compliance with any earnest money contract or other agreement, or for legal or other advice in connection with this transaction, and that we are obligated to retain for our own interests such legal counsel as we shall deem necessary to protect our interests. You are not liable to us if the purchaser instructs you not to disburse loan proceeds or close this transaction.

We further acknowledge that Great Western Union Federal Savings and Loan Association is not to be charged with liability with respect to the title to the said real estate, with any taxes or other charges in connection therewith or in connection with this transaction, or with the adequacy or legal sufficiency of any document prepared or employed in connection with this transaction.

closed in its offices[2] and provides a booklet prescribed by the United States Department of Housing and Urban Development.

As part of its "closing service", Great Western charges the parties a settlement or closing fee. The fee is designed to recover Great Western's actual cost in performing the "closing services" and is determined by a schedule without regard to services actually performed. This fee is not itemized according to the "closing service" provided and includes charges for Great Western's services in (1) obtaining hazard and casualty insurance on the property; (2) establishing a computer record for the loan obligation; (3) preparation of additional disclosure statements required by RESPA and the Truth–In–Lending Act (15 U.S.C. § 1601 *et seq.*); (4) obtaining signatures on the documents; (5) recording documents; and (6) disbursing loan proceeds.

In addition to the closing fee, Great Western also charges a loan service fee for new loans or an assumption fee for loan assumption agreements. For these fees Great Western performs the following services: (1) receives and prepares the loan or assumption application; (2) verifies the borrower's financial and credit history; (3) prepares and delivers to the borrower various disclosure forms required by RESPA;

---

[2]The form letter of commitment sent by Great Western to its borrower (the purchaser) requires a promissory note and deed of trust in the form used by Great Western and attempts to disclaim any liability of Great Western surrounding both the loan and sale transaction. This form provides:

6. The loan will be closed in our _____ office. We will prepare the loan documents on our usual forms; however, you must understand we shall prepare those documents on our own behalf; and only for the purpose of perfecting our security interest for this loan. If you wish legal or other advice in connection with the loan or your purchase transaction you must retain your own legal counsel and may not rely upon Great Western to any extent to interpret or insure compliance with any earnest money contract or agreement, or to otherwise protect your interests. Further, by your acceptance of the loan you shall agree that Great Western shall not be charged by you with liability with respect to the title to the real property or with the adequacy or legal sufficiency of any document prepared or employed in connection with this transaction. Copies of the documents we shall prepare for this loan are available from us at your request so that you and your own legal counsel can review them.

(4) obtains and evaluates an appraisal of the property; (5) reviews the entire loan application package; and (6) prepares and issues to the borrower a loan commitment letter.

Between July 1, 1975, and December 31, 1975, Great Western conditioned its approval of new loans as well as assumption applications upon its closing, in Great Western's offices, *all* transactions involving Great Western and the purchaser and seller. This policy, although in force for only 6 months, was applied even in those cases where Great Western knew that the purchaser and seller had previously appointed attorneys, title companies, or escrow companies as their closing agent for the sale transaction.

In one transaction Great Western's closing agent Kelley prepared *for a seller and buyer* a promissory note and second deed of trust *solely between the seller and buyer,* which was subordinate to Great Western's existing deed of trust securing the loan being assumed by the purchaser.

At all times relevant to the action herein, neither appellant was enrolled as an active member of respondent Bar Association.

In December 1975, respondent Bar Association filed this action for a declaratory judgment that many of Great Western's activities constituted the unauthorized practice of law and to restrain Great Western from further acts constituting the unauthorized practice of law. Following trial, the court entered a judgment which declared the following acts of Great Western and its employee Kelley to be the unauthorized practice of law.[3]

2. The activities . . . between July 1, 1975 and December 31, 1975 in conditioning approval of its loan applications and assumption applications on the substitution of its agents for attorneys or others previously appointed by the parties to real estate transactions for

---

[3]The trial court also declared that Kelley's preparation, for the buyer and seller of real estate, of a promissory note and second deed of trust, to which neither Great Western nor Kelley was a party, constituted the unauthorized practice of law. Insofar as Great Western concedes this activity is unauthorized and does not assign error to this portion of the judgment, we will not consider it further.

the purpose of drafting the following legal documents utilized in said transactions: deeds substantially in the form prescribed by RCW 64.04.030, RCW 64.04.040, and RCW 64.04.050, to which the Defendant is not a party and whether or not a fee is charged of the parties thereto, and mortgages, deeds of trust, promissory notes or agreements modifying such documents to which the Defendant Great Western is a party and charges a fee of the other party for such preparation, or to which the Defendant Great Western is not a party, constitutes the unauthorized practice of law.

3. The selection and completion of deed forms, or the drafting of deeds substantially in the form prescribed by RCW 64.04.030, RCW 64.04.040, and RCW 64.04.050, conveying an interest in real property when done with or without the charging of a fee by one not licensed to practice law and not a party to said conveyance.

4. The charging of a fee to the other party for the selection and completion of or the drafting of Mortgages, Deeds of Trust, Promissory Notes and agreements modifying said documents by one not licensed to practice law where the preparer of such legal documents is a party to the documents by reason of lending its funds to the other party to such documents.

Although it entered a finding of fact that the foregoing activities would continue unless restrained, the trial court denied the Bar Association's request for injunctive relief.

Great Western appealed assigning error to the foregoing paragraphs of the judgment and to the conclusions of law entered in support of the judgment. The Bar Association cross–appealed the trial court's refusal to grant injunctive relief.

No error has been assigned to the findings of fact so they become the established facts of this case. *Lakeside Pump & Equip., Inc. v. Austin Constr. Co.,* 89 Wn.2d 839, 842, 576 P.2d 54 (1958); *Jordin v. Vauthiers,* 89 Wn.2d 725, 728, 575 P.2d 709 (1978). Consequently our review is limited to determining whether those facts support the trial court's conclusions of law and judgment. *Lakeside Pump & Equip., Inc. v. Austin Constr. Co., supra* at 842; *Jordin v. Vauthiers, supra* at 728.

Central to this appeal is Great Western's argument that the trial court erroneously concluded that:

> The selection and completion of form legal documents, or the drafting of legal documents, including Deeds, Mortgages, Deeds of Trust, Promissory Notes and agreements modifying such legal documents, whereby the parties thereto are subject to binding legal rights and obligations, constitutes the practice of law.

(Conclusion of law No. 4.) Since the unchallenged findings of fact establish that Great Western engaged in these activities we need only consider Great Western's legal argument that such activities must be performed *for another* to be the "practice of law."

■ The basic fallacy in Great Western's argument is its failure to differentiate between activities which constitute the practice of law from the person engaging in those activities. It is the nature and character of the service performed which governs whether given activities constitute the practice of law. *Washington State Bar Ass'n v. Washington Ass'n of Realtors,* 41 Wn.2d 697, 699, 251 P.2d 619 (1952). If the nature and character of the activities result in a determination that the activities are the practice of law, the subsequent inquiry becomes whether the one undertaking such practice is authorized to do so. Hence, in considering the trial court's conclusion of law, we are only concerned with whether the nature and character of the activities involved warrant the conclusion that *anyone* undertaking them is engaged in the practice of law.

■ The "practice of law" does not lend itself easily to precise definition. However, it is generally acknowledged to include not only the doing or performing of services in the courts of justice, throughout the various stages thereof, but in a larger sense includes legal advice and counsel and the preparation of legal instruments by which legal rights and obligations are established. *In re Droker & Mulholland,* 59 Wn.2d 707, 719, 370 P.2d 242 (1962); *State ex rel. Laughlin v. Washington State Bar Ass'n,* 26 Wn.2d 914, 927–28, 176 P.2d 301 (1947); *Yount v. Zarbell,* 17 Wn.2d 278, 135 P.2d

309 (1943); *Hecomovich v. Nielsen,* 10 Wn. App. 563, 571, 518 P.2d 1081 (1974). *See Burien Motors, Inc. v. Balch,* 9 Wn. App. 573, 513 P.2d 582 (1973); *Andersen v. Northwest Bonded Escrows, Inc.,* 4 Wn. App. 754, 484 P.2d 488 (1971). Further, selection and completion of preprinted form legal documents has been found to be the "practice of law." *In re Droker & Mulholland, supra; Washington State Bar Ass'n v. Washington Ass'n of Realtors, supra. See In re Estes,* 186 Wash. 690, 57 P.2d 1262 (1936); *In re McCallum,* 186 Wash. 312, 57 P.2d 1259 (1936); *Paul v. Stanley,* 168 Wash. 371, 12 P.2d 401 (1932).

The services at issue here are ordinarily performed by licensed attorneys, involve legal rights and obligations, and by their very nature involve the practice of law. We thus must agree with the trial court's conclusion that the selection and completion of form legal documents, or the drafting of such documents, including deeds, mortgages, deeds of trust, promissory notes and agreements modifying these documents constitutes the practice of law.

We next must consider Great Western's challenge to the trial court's conclusions of law and judgment that it was not authorized to engage in such practice of law. In this respect, the unchallenged findings of fact establish that Great Western charged and received a "closing" fee from the purchaser (its borrower) and the seller of the property.[4] This "closing" fee included charges (1) for the preparation, selection, or drafting of the deed between the purchaser and seller to which Great Western was not a party and (2) for the preparation, selection or drafting of the promissory notes, deeds of trust, mortgages, and agreements modifying these documents to which Great Western was a party. On the basis of these facts, we must determine whether the status of Great Western in performing these services warrants the determination that such practice of law was authorized.

---

[4]Great Western's assertion in its reply brief that regulations of the Federal Home Loan Bank Board *require* that such charges be made is not well founded.

■ Ordinarily, only those persons who are licensed to practice law in this state may do so without liability for unauthorized practice. RCW 2.48.010 *et seq.*; APR 5, 7; DRA 6.7. Moreover, both the legislature and this court have recognized that a person may appear and act in any court as his own attorney without threat of sanction for unauthorized practice. *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 349 P.2d 1073 (1960); *Americus v. McGinnis*, 128 Wash. 28, 221 P. 987 (1924); RCW 2.48.190. *Cf.* CR 11; RAP 10.1(d), 10.2(e), 10.3(d).

Additionally, we have recognized that a party to a legal document may select, prepare or draft that document without fear of liability for unauthorized practice. *See, e.g., In re Droker & Mulholland, supra; Mattieligh v. Poe,* 57 Wn.2d 203, 356 P.2d 328, 94 A.L.R.2d 464 (1960); *Washington State Bar Ass'n v. Washington Ass'n of Realtors, supra; Paul v. Stanley, supra.* This exception to our general prohibition against the practice of law by layper-

---

The applicable regulation governing initial loan charges is 12 C.F.R. 545.6–10. During the period in question C.F.R. 545.6–10 (1975) provided in pertinent part:

> Borrowers *may* be required to pay the necessary initial charges in connection with the making of a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, closing of the loan, and other necessary incidental services and costs in such reasonable amounts as may be fixed by the board of directors; such necessary initial charges may be collected by the association from the borrower and paid to any persons, including any such director, officer, employee, attorney or firm rendering such services: . . . Upon the closing of the loan, the association *shall furnish* the borrower a loan settlement statement showing *in detail* the charges or fees the borrower has paid or obligated himself to pay to the association or to any other person in connection with such loan; and a copy of such loan settlement statement shall be retained in the records of the association. [23 F.R. 9901, Dec. 23, 1958]

(Italics ours.)

We fail to see how this regulation *requires* Great Western (1) to prepare any document regardless of whether it is a party thereto; (2) to charge its borrower for document preparation; or (3) to charge the seller a fee for any services. At best the regulation *permits* Great Western to charge its borrower a fee for actual expenses incurred and if charged, to *itemize in detail* each charge incurred.

Accordingly, we are not persuaded that this federal regulation is relevant to our inquiry concerning whether Great Western's activities constitute the unauthorized practice of law.

sons is analogous to the "pro se" exception for court proceedings. Both exceptions are founded upon the belief that a layperson may desire to act *on his own behalf* with respect to *his* legal rights and obligations without the benefit of counsel.

The "pro se" exceptions are quite limited and apply only if the layperson is acting solely *on his own behalf. See Kentucky State Bar Ass'n v. Tussey,* 476 S.W.2d 177 (Ky. Ct. App. 1972); *New Jersey State Bar Ass'n v. Northern N.J. Mort. Associates,* 32 N.J. 430, 161 A.2d 257 (1960); *State Bar of Ariz. v. Arizona Land Title & Trust Co.,* 90 Ariz. 76, 366 P.2d 1 (1961), *modified on rehearing,* 91 Ariz. 293, 371 P.2d 1020 (1962). Moreover, a layperson who receives compensation for such legal services may not rely upon the "pro se" exception. The receipt of compensation is conclusive evidence that the layperson is not merely acting for himself but has assumed the additional burden of acting for another. *See Kentucky State Bar Ass'n v. Tussey, supra; New Jersey State Bar Ass'n v. Northern N.J. Mort. Associates, supra; State Bar of Ariz. v. Arizona Land Title & Trust Co., supra. See also Washington State Bar Ass'n v. Washington Ass'n of Realtors, supra* at 699; Annot., *Drafting, of filling in blanks in printed forms, of instruments relating to land by real–estate agents, brokers, or managers as constituting practice of law,* 53 A.L.R.2d 788, at § 4 (1957). In such instances, a layperson will be liable for the unauthorized practice of law *even though* he is a party to, or asserts a substantial interest in, the document or court proceeding.

Great Western's reliance upon our "pro se" exception to authorize its practice of law is accordingly misplaced. Great Western charged the purchaser (its borrower) and the seller of the property a fee for the "closing services" it provided. This fee included a charge for the selection, preparation or drafting of both the necessary loan documents *and* the deed between the purchaser and seller. By charging a fee for such legal services, Great Western removed itself from

the protection afforded by our "pro se" exception to the general prohibition against the unauthorized practice of law.

We therefore agree with the trial court's conclusion that Great Western's preparation of the loan documents to which it was a party and for which it charged its borrower a fee is the practice of law for itself *as well as for the borrower*. We affirm paragraph 4 of the judgment which declares these activities the unauthorized practice of law.

We also agree with the trial court's conclusion that Great Western's selection and completion of deed forms, or its drafting of deeds substantially in the form prescribed by RCW 64.04.030–.050,[5] *for which it also charged a fee,* is the unauthorized practice of law. Thus, we also affirm that part of paragraph 3 of the judgment which declares these activities to be unauthorized.

Great Western also assigns error to the trial court's conclusion of law and judgment that its activities in selecting, completing, or drafting deeds passing between the purchaser (its borrower) and the seller would constitute the unauthorized practice of law *even if a fee was not charged.* In this respect, Great Western does not contend it would in fact be a party to the deed. Rather, it asserts it would have a "substantial interest" in the quality of the deed passing between these parties to authorize it to select, prepare and draft the deed. This interest is said to arise because the Federal Savings and Loan Associations Act (12 U.S.C. § 1464) requires Great Western to obtain a first lien security upon real property taken as security for its loans.[6] 12 U.S.C. § 1464(c).

---

[5]We are cognizant of Great Western's objection that the record contains no finding of fact that it selected, prepared or drafted any conveyance document other than a statutory warranty deed. Inasmuch as our opinion would not differ had the record contained a finding of fact indicating Great Western had selected, prepared or drafted a quitclaim deed or a bargain and sale deed, we need not limit our decision herein to such activity with respect to statutory warranty deeds.

[6]12 U.S.C. § 1464(c) provides that such associations "shall lend their funds only on the security of *their savings accounts* or on the security of first liens upon

■ We agree the trial court erred by entering that portion of its conclusion of law and judgment which purports to declare that Great Western's activity in selecting, completing or drafting deeds passing between the purchaser and seller would be unauthorized *even if no fee were charged.* This issue was not properly before the trial court. There is neither evidence nor any finding of fact to indicate that Great Western *ever performs* these legal services *without charging a fee.* In fact, Great Western *not only charges a fee for these services but it asserts that it must do so* under the regulations of the Federal Home Loan Bank Board.[7] *See* 12 C.F.R. 545.6–10. Given these facts, we cannot sustain the conclusion of law and judgment *on this issue.* They were entered without any factual basis. For the same reason, we need not consider Great Western's contention that *in the absence of a fee* it could have selected, prepared or drafted a deed because it had a "substantial interest" in the quality of the deed passing between the purchaser and seller. The only evidence is that a fee *was in fact charged.*

With respect to the selection, preparation or drafting of such deeds, amicus curiae also asserts these legal services cannot be the unauthorized practice of law because, as a practical matter, a lender will *never select the type of deed* and will act only as a "scrivener" for the parties. For "scrivening," amicus curiae asserts a fee may properly be charged. But, we need not consider the arguments of

---

real property . . ." (Italics ours.) The "first lien" required is that the property can be subjected to satisfaction of the obligation secured with the same *priority* as a first mortgage, a first deed of trust, or a first trust deed in the jurisdiction where the property is located. 12 U.S.C. § 1464(c). Thus, even if a loan is made under the "first lien" option, the statute dictates only that Great Western obtain first *priority* in the event of default on the underlying obligation. There is no statutory requirement that particular covenants of title be used.

[7]As we have stated in footnote 4, the assertion that a charge is required by 12 C.F.R. 545.6–10 is without merit.

amicus curiae. The unchallenged findings of fact demonstrate that Great Western *did in fact select the deed form* and thus did not act merely as a "scrivener." Furthermore, we ordinarily do not consider arguments raised only by amicus curiae. *State v. Smith,* 88 Wn.2d 639, 645 n.1, 564 P.2d 1154 (1977); *Long v. Odell,* 60 Wn.2d 151, 154, 372 P.2d 548 (1962); *Walker v. Wiley,* 177 Wash. 483, 491, 32 P.2d 1062 (1934).

Great Western has also assigned error to paragraph 2 of the judgment and to its allied conclusion of law. On this issue, Great Western's argument is quite limited. It merely asserts that its requirement that the parties substitute Great Western's closing agent for the agent selected by the parties is the unauthorized practice of law *only if* the document preparation involved therein is unauthorized. Great Western then concedes that its substitution condition would be an unauthorized practice if the document preparation is unauthorized. Since we have already determined the document preparation to be unauthorized, and in light of Great Western's concession that this renders its substitution condition unauthorized, we find this assignment of error to be without merit. Moreover, Great Western's failure to seriously brief or argue this matter leads us to conclude that the claimed error has been abandoned. *See Lassila v. Wenatchee,* 89 Wn.2d 804, 809, 576 P.2d 54 (1978); *State v. Wood,* 89 Wn.2d 97, 99, 569 P.2d 1148 (1977).

We also reject Great Western's argument that declaratory relief is precluded because the Bar Association failed to establish that these unauthorized practices resulted in public harm. It is our duty to protect the public from the activity of those who, because of lack of professional skills, may cause injury whether they are members of the bar or persons never qualified for or admitted to the bar. *Washington State Bar Ass'n v. Washington Ass'n of Realtors, supra* at 699. In the sphere that encompasses the regulation of the practice of law, it is not merely this court's function to redress past injury but to prevent future harm

where possible. *In re Droker & Mulholland, supra* at 721. While the record may not disclose that Great Western's unauthorized practices specifically injured the public, proof thereof is not indispensible to the granting of declaratory relief. We have recognized, as has the legislature, that the unauthorized practice of law by laypersons is *not* in the public's best interest. *See* RCW 2.48.010 *et seq.* We thus hold that declaratory relief was appropriate. *See State Bar of Ariz. v. Arizona Land Title & Trust Co., supra.*

Finally, we agree with the Bar Association that injunctive relief should have been granted to restrain Great Western from continuing its unauthorized practice. The trial court entered an unchallenged finding of fact that Great Western's practices *would continue unless restrained.* Having determined that these practices constitute the unauthorized practice of law and that their continuance is not in the best interest of the public, it is our responsibility to prevent any possible future harm which may arise from such practices. *In re Droker & Mulholland, supra* at 721. Accordingly, we reverse the trial court and direct it to enter an appropriate order enjoining Great Western from continuing those practices herein determined to be the unauthorized practice of law.

In conclusion we: (1) affirm the trial court insofar as it determined Great Western's practices with respect to the loan documents to be the unauthorized practice of law; (2) affirm the trial court insofar as it determined that Great Western's charging a fee to its borrower (the purchaser) for preparation, selection or drafting of the deed between the borrower and the seller constituted the unauthorized practice of law; (3) reverse the trial court insofar as it determined that Great Western would also engage in the unauthorized practice of law *if a fee were not charged* the borrower with respect to Great Western's preparation, selection or drafting of the deed between the borrower and seller, the issue not being properly before us; and (4) reverse the trial court insofar as it refused to issue an injunction and order that court to enter an appropriate

order enjoining Great Western from continuing those practices determined to be the unauthorized practice of law.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied February 21, 1979.