[No. 49549–1.   En Banc.   February 23, 1984.]

ANGELINE A. COBURN, *Individually and as Administratrix,*
ET AL, *Respondents,* v. PETER SEDA, ET AL,
*Defendants,* KADLEC HOSPITAL,
*Petitioner.*

STAFFORD, J., did not participate in the disposition of this case.

*Roberts & Shefelman, Lee R. Voorhees, Jr., Paul L. Ahern,* and *Edwin D. Rauzi,* for petitioner.

*John R. Sullivan,* for respondents.

*Walter Walkinshaw, Stimson Bullitt,* and *Lorrie D. Northey* on behalf of Washington State Hospital Association and *Jeffrey P. Smith* on behalf of Washington State Medical Association, amici curiae for petitioner.

*Bryan P. Harnetiaux, Robert H. Whaley,* and *Gary Bloom* on behalf of Washington State Trial Lawyers Association, amici curiae for respondents.

UTTER, J.—Petitioner Kadlec Hospital challenges a trial court order to answer an interrogatory and produce records of a hospital committee, asserting that the requested information is immune from discovery under RCW 4.24.250 and the common law. We hold RCW 4.24.250 applies to this medical malpractice action and affords an immunity from discovery to the written records, proceedings, and reports of hospital committees which review the quality of patient care.

Respondents, Angeline Coburn and her children, brought this medical malpractice action against Dr. Peter Seda and Kadlec Hospital following the death of Denny Coburn. Mr. Coburn died during a heart catheterization procedure performed by Dr. Seda at Kadlec Hospital.

As part of discovery, respondents propounded an interrogatory and request for production seeking information about a hospital review committee. The interrogatory, request for production, and the responses of petitioner were

as follows:

    28. Does the hospital have a review committee that reviews the quality of patient care? If so, state:
      (a) The name of the committee.
      (b) The names and addresses of the members of the committee.
      (c) Did the committee review the incident which is the subject of this lawsuit?
      (d) If so, where and when and who was present?
      (e) Was a written report prepared by the committee concerning the incident?

ANSWER: Defendant objects to this inquiry for the reason that any in–hospital reviews of quality of patient care are privileged and confidential and are protected by common law privilege (*see State ex rel. Haugland v. Smythe*, 25 Wn.2d 161) as well as by statutory privilege, *see* RCW 4.24.250. *See also Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.D.C. 1970).

Request for Production No. 9. Produce the written report identified in your answer to the foregoing interrogatory and the minutes of the committee meeting.
    N/A

Following petitioner's refusal to divulge the requested information, respondents brought a motion to compel Kadlec Hospital to answer the interrogatory and produce the written report. The trial judge granted this motion, ruling that no statutory or common law privilege applied. The trial judge found RCW 4.24.250 applied only to actions brought by one health care provider against another, not to medical malpractice actions. The plain language of the statute compels us to rule otherwise.

I

RCW 4.24.250 provides:

    Any health care provider as defined in RCW 7.70.020 (1) and (2) as now existing or hereafter amended who, in good faith, files charges or presents evidence against another member of their profession based on the claimed incompetency or gross misconduct of such person before a regularly constituted review committee or board of a professional society or hospital whose duty it is to evalu-

ate the competency and qualifications of members of the profession, including limiting the extent of practice of such person in a hospital or similar institution, or before a regularly constituted committee or board of a hospital whose duty it is to review and evaluate the quality of patient care, shall be immune from civil action for damages arising out of such activities. The proceedings, reports, and written records of such committees or boards, or of a member, employee, staff person, or investigator of such a committee or board, shall not be subject to subpoena or discovery proceedings in any civil action, except actions arising out of the recommendations of such committees or boards involving the restriction or revocation of the clinical or staff privileges of a health care provider as defined above.

The statute, on its face, prohibits discovery of certain records in "*any* civil action" with a single exception: actions arising out of committee recommendations which involve restriction or revocation of staff privileges. In construing this statute, we give the word "any" its ordinary and usual meaning. *See John H. Sellen Constr. Co. v. Department of Rev.*, 87 Wn.2d 878, 882, 558 P.2d 1342 (1976). Thus, all civil actions not falling within the specific exception are subject to the statutory provision shielding certain information from discovery. The discovery prohibition therefore applies to medical malpractice actions.

## II

What is the nature of the statutory protection granted the proceedings, reports and written records of quality review committees? A matter may be nondiscoverable either because it is subject to an immunity from discovery or a privilege. Courts often use the terms "privilege" and "immunity" interchangeably, hence the definitional distinction between the two is somewhat muddy. *Cf.* 8 C. Wright & A. Miller, *Federal Practice* § 2025, at 211–12 (1970). Despite this lack of clarity, it appears that immunity is a subset of privilege. An immunity may make a matter nondiscoverable but does not control its potential admissibility at trial. In contrast, privilege is a rule of evidence expressly

incorporated into the rules of discovery. CR 26(b)(1). *See United States v. Reynolds,* 345 U.S. 1, 6, 97 L. Ed. 727, 73 S. Ct. 528, 32 A.L.R.2d 382 (1953). A matter which is privileged is both nondiscoverable and inadmissible.

Discovery immunities and evidentiary privileges may differ in underlying rationale. One such difference is exemplified by comparing the work product doctrine and the attorney–client privilege. The work product doctrine grants an immunity from discovery to an attorney's work product, permitting attorneys to work with a certain degree of privacy and plan strategy without undue interference. *Hickman v. Taylor,* 329 U.S. 495, 510–11, 91 L. Ed. 451, 67 S. Ct. 385 (1947). In contrast, the attorney–client privilege protects evidence from public disclosure so that clients will not hesitate to speak freely and fully inform their attorneys of all relevant facts. *See* E. Cleary, *McCormick on Evidence* § 87 (2d ed. 1972); Gardner, *Agency Problems in the Law of Attorney–Client Privilege: Privilege and "Work Product" Under Open Discovery (Part II),* 42 U. Det. L.J. 253, 290 (1965). Like most privileges, the attorney–client privilege has its basis in the confidential nature of the communication and seeks to foster a relationship deemed socially desirable. *See generally* 8 J. Wigmore, *Evidence* § 2285, at 531 (3d ed. 1940), *quoted in State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946) (Wigmore's four fundamental conditions necessary to the establishment of a privilege).

Policies favoring both discovery immunities and evidentiary privileges underlie RCW 4.24.250. The discovery protection granted hospital quality review committee records, like work product immunity, prevents the opposing party from taking advantage of a hospital's careful self–assessment. The opposing party must utilize his or her own experts to evaluate the facts underlying the incident which is the subject of suit and also use them to determine whether the hospital's care comported with proper quality standards.

The discovery prohibition, like an evidentiary privilege,

also seeks to protect certain communications and encourage the quality review process. Statutes bearing similarities to RCW 4.24.250 prohibit discovery of records on the theory that external access to committee investigations stifles candor and inhibits constructive criticism thought necessary to effective quality review.[1] Courts determining that hospital quality review records should be subject to a common law privilege have advanced this same rationale.[2] As the court stated in *Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249, 250 (D.D.C. 1970), *aff'd,* 479 F.2d 920 (D.C. Cir. 1973):

> Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. . . . Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

Although RCW 4.24.250 reflects policies supporting both discovery immunities and evidentiary privileges, it is not clear that the statute grants a full evidentiary privilege. *Cf. State v. Thompson,* 54 Wn.2d 100, 104–07, 338 P.2d 319 (1959); *State ex rel. Haugland v. Smythe, supra; Cook v. King Cy.,* 9 Wn. App. 50, 52, 510 P.2d 659 (1973); *Mebust*

---

[1]*See, e.g., Tucson Med. Ctr. Inc. v. Misevch,* 113 Ariz. 34, 545 P.2d 958 (1976) (interpreting Ariz. Rev. Stat. Ann. §§ 36–445 *et seq.*); *Matchett v. Superior Court,* 40 Cal. App. 3d 623, 115 Cal. Rptr. 317 (1974) (interpreting Cal. Evid. Code § 1157); *Posey v. District Court,* 196 Colo. 396, 586 P.2d 36 (1978) (interpreting Colo. Rev. Stat. § 12–43.5–101); *Danklef v. Wilmington Med. Ctr.,* 429 A.2d 509 (Del. Super. Ct. 1981) (interpreting Del. Code Ann. tit. 24, § 1768(b)); *Hollowell v. Jove,* 247 Ga. 678, 279 S.E.2d 430 (1981) (interpreting Ga. Code Ann. § 88–3204); *Mennes v. South Chicago Comm'ty Hosp.,* 100 Ill. App. 3d 1029, 427 N.E.2d 952 (1981) (interpreting Ill. Rev. Stat. ch. 51, § 101); *Kalish v. Mt. Sinai Hosp.,* 270 N.W.2d 783 (Minn. 1978) (interpreting Minn. Stat. Ann. §§ 145.61 *et seq.*); *Oviatt v. Archbishop Bergan Mercy Hosp.,* 191 Neb. 224, 214 N.W.2d 490 (1974) (interpreting Neb. Rev. Stat. § 71–2048); *see generally* 23 C. Wright & K. Graham, *Federal Practice* § 5431, at 835–40 (1980).

[2]*Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249 (D.D.C. 1970), *aff'd,* 479 F.2d 920 (D.C. Cir. 1973); *cf. Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y. 1971).

*v. Mayco Mfg. Co.,* 8 Wn. App. 359, 360–63, 506 P.2d 326 (1973). Moreover, in the context of this case, such an interpretation is unnecessary. Respondent's request for disclosure arose in the context of discovery; therefore we need only determine the propriety of discovery.

RCW 4.24.250 does grant an immunity from discovery to the reports, records, and proceedings of hospital quality review boards. This holding is in accord with the approach taken by the court in *Matchett v. Superior Court,* 40 Cal. App. 3d 623, 115 Cal. Rptr. 317 (1974). The court there interpreted Cal. Evid. Code § 1157, a statute substantially similar to RCW 4.24.250. The court found the statute granted immunity from discovery to medical staff committee records, stating:

> Literally, section 1157 establishes an immunity from discovery but not an evidentiary privilege in the sense that medical staff records are excluded from evidence. . . . Because discoverability is our only concern, we need not decide whether section 1157 forms an exclusionary rule barring hospital staff records as evidence.

40 Cal. App. 3d at 629 n.3.

### III

What is the scope of the statute's grant of immunity from discovery? The protection afforded by the statute was nonexistent at common law. *Cf. Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 248 N.W.2d 433 (1976). Further, the prohibition of discovery is in sharp contrast to the general policy favoring broad discovery. *See Bushman v. New Holland Div. of Sperry Rand Corp.,* 83 Wn.2d 429, 434, 518 P.2d 1078 (1974); *State v. Hamilton,* 24 Wn. App. 927, 935, 604 P.2d 1008 (1979), *review denied,* 94 Wn.2d 1007 (1980). As a statute in derogation of both the common law and the general policy favoring discovery, RCW 4.24-.250 is to be strictly construed and limited to its purposes. *See Department of Social & Health Servs. v. Latta,* 92 Wn.2d 812, 819–20, 601 P.2d 520 (1979); *Keller v. Bellingham,* 92 Wn.2d 726, 730, 600 P.2d 1276 (1979); *Randa v. Bear,* 50 Wn.2d 415, 420, 312 P.2d 640 (1957); *Hollowell v.*

*Jove,* 247 Ga. 678, 279 S.E.2d 430, 433 (1981).

The statute may not be used as a shield to obstruct proper discovery of information generated outside review committee meetings. The statute does not grant an immunity to information otherwise available from original sources. For example, any information from original sources would not be shielded merely by its introduction at a review committee meeting.[3] Further, the hospital must identify all persons who have knowledge of the underlying event which is the basis of the malpractice action regardless of whether those persons presented evidence to a hospital review committee.

## IV

What is the statute's impact on this action? RCW 4.24-.250 will have an effect on the scope of discovery only if the committee in question is "a regularly constituted committee or board of [the] hospital whose duty it is to review and evaluate the quality of patient care . . ."

The record of the proceedings below reveals that a "Charting Committee" or "Mortality Review Committee" existed at Kadlec Hospital which reviewed the medical records of Mr. Coburn. The trial judge made no finding of fact regarding the statute's applicability to this particular committee however, as he ruled the statute inapplicable to malpractice actions. On the sparse record before us, we are unable to conclude whether the committee falls within the statute's requirements. We remand so that the trial court may determine whether Kadlec Hospital's committee satisfies the statutory definition.

---

[3]Concern that the statute might be used in this manner was expressed by Representative Bottiger during debate of the original 1971 enactment of RCW 4.24.250, when he asked: "'Can you get the evidence out of the civil malpractice action by setting up a [peer review] committee hearing and filing the reports [of a different type of committee] with them?'" A sponsor of the bill replied, "'[T]he answer to that question is clearly "no."'" House Journal, 42d Legislature (1971), at 877. The statute was subsequently amended to prohibit discovery of reports of quality care review committees, in addition to those of peer review committees. The concern expressed in this colloquy nevertheless remains valid.

■ In making this determination, the trial court may wish to consider, in addition to other relevant evidence, the guidelines and standards of the Joint Commission on Accreditation of Hospitals and the bylaws and internal regulations of Kadlec Hospital. These materials may aid the trial court in ascertaining the organization and function of the committee as well as whether it is "regularly constituted". *Cf. Matchett v. Superior Court,* 40 Cal. App. 3d 623, 627, 115 Cal. Rptr. 317 (1974); *Franco v. District Court,* 641 P.2d 922, 926 (Colo. 1982). A further factor which the trial judge should take into account is whether the committee's function is one of current patient care or retrospective review. *Compare Davidson v. Light,* 79 F.R.D. 137 (D. Colo. 1978) *with Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249 (D.D.C. 1970), *aff'd* 479 F.2d 920 (D.C. Cir. 1973).

Assuming without deciding that the Kadlec Hospital committee meets the statutory definition, the Request for Production seeks the report of the hospital review committee and falls squarely within the statutory language protecting "written reports" from discovery. As such it would be nondiscoverable.

While interrogatory 28 does not explicitly request disclosure of "proceedings, reports, and written records", it does seek information which would be included within committee records. The statute's application to the interrogatory must therefore be determined by deciding whether disclosure would interfere with the statutory purposes. Disclosure of the existence and name of the quality review committee would have no detrimental effect on open discussion during committee investigations. Similarly, discovery of the location and time of the review would also be unlikely to inhibit criticism. This data is not the type of substantive information about specific cases and individuals generated in the course of committee meetings the statute seeks to protect. Disclosure of the remainder of the information requested in the interrogatory, however, could well prevent a review committee from operating in a fully effective man-

ner. Individuals may be hesitant to participate in peer or quality review proceedings if anonymity is not assured.

## V

■ Amici on behalf of Washington State Trial Lawyers Association urges the adoption of a trial court in camera review procedure to be utilized whenever the protection of RCW 4.24.250 is sought by a party. This argument is raised only by amici curiae, therefore we need not consider it. *Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 59–60, 586 P.2d 870 (1978); *Long v. Odell,* 60 Wn.2d 151, 154, 372 P.2d 548 (1962). Further, while an in camera review procedure might prove beneficial in some cases, the propriety of such a procedure is not ripe for decision in this case.

■ Finally, petitioner argues that if any of the information sought by respondent is not protected by RCW 4.24-.250, it should be protected by a common law privilege. *See State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946). The Legislature, in enacting RCW 4.24.250, has struck a balance between access to evidence and the need for medical staff candor. This legislative balance is sufficient to assure effective quality review. There is no need to further constrict access to information and we therefore reject any common law privilege.

The trial court's ruling is reversed and remanded for further proceedings to determine whether Kadlec Hospital's committee is a regularly constituted committee which reviews and evaluates the quality of patient care.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.