247 P.3d 7 (2011)
Leasa LOWY, Appellant,
v.
PEACEHEALTH, a Washington corporation; St. Joseph Hospital, Respondents, and
Unknown John Does, Defendants.
No. 63866-1-I.
Court of Appeals of Washington, Division 1.
January 31, 2011.
*8 Joel Dean Cunningham, J. Andrew Hoyal II, Luvera Law Firm, Seattle, WA, Michael Jon Myers, Michael J. Myers PLLC, Spokane, WA, for Appellant.
Mary H. Spillane, Daniel W. Ferm, Williams Kastner & Gibbs, John Coleman Graffe, Jr., Johnson Graffe Keay Moniz, Jennifer M. Gannon Crisera, Bennett Bigelow & Leedom P.S., Seattle, WA, for Respondents.
BECKER, J.
¶ 1 An issue concerning discovery of patient records comes to us on discretionary review. The plaintiff sustained a neurological injury to her left arm after an intravenous infusion in the hospital. As relevant to her cause of action against the hospital for corporate negligence, she requests production of medical charts of other patients who have experienced complications or injuries at the hospital in connection with intravenous infusions. To meet this request would be unduly burdensome unless the hospital is permitted to use its quality improvement database to identify the relevant records. The hospital contends the use of the database to identify relevant patient records is prohibited by RCW 70.41.200(3), a statute designed to protect the confidentiality of information created for and maintained by a quality improvement committee. We disagree and hold the hospital may internally review the database for this purpose. The order denying discovery is reversed.
¶ 2 Appellant Leasa Lowy, formerly a staff physician at St. Joseph's Hospital in Bellingham, stayed at the hospital as a patient for six days in January 2007. Lowy alleges that during her stay, she sustained permanent neurological injury to her left arm as a result of negligence when she had an intravenous, or IV, infusion. According to her physician, Lowy will no longer be able to practice her specialties of obstetrics and gynecology due to the injury.
¶ 3 The hospital is owned and operated by PeaceHealth. Lowy commenced this action against PeaceHealth and certain hospital employees. One of her theories against PeaceHealth is that the hospital is liable for corporate negligence. The doctrine of corporate negligence applies to hospitals in Washington. Pedroza v. Bryant, 101 Wash.2d 226, 229-33, 677 P.2d 166 (1984).
¶ 4 In connection with her theory of corporate negligence, Lowy sought to obtain, through a deposition under CR 30(b)(6), information relating to instances of "IV infusion complications and/or injuries at St. Joseph's Hospital for the years 2000-2008." It is undisputed that the requested information is relevant.
¶ 5 One way for the hospital to gather the requested information would be to go through its entire database of patient records. But the hospital lacks the capability of conducting such a search electronically. The parties agree that requiring the hospital to conduct the search manually, page-by-page, would be unduly burdensome.
¶ 6 Another way for the hospital to obtain the requested information would be to consult a computerized database maintained by the hospital quality assurance committee. As a member of a quality and safety leadership *9 team at the hospital, Lowy knew the database was capable of producing a list of patient IV injuries indexed by date and identification number. It is undisputed that the hospital, through use of such a list, could readily identify the records of patients who experienced complications with IV infusions. After redactions to protect patient confidentiality, those records could then be produced to Lowy.
¶ 7 PeaceHealth believes the use of the quality assurance database to identify the records sought by Lowy is prohibited by RCW 70.41.200(3).
Information and documents, including complaints and incident reports, created specifically for, and collected and maintained by, a quality improvement committee are not subject to review or disclosure, except as provided in this section, or discovery or introduction into evidence in any civil action.
RCW 70.41.200(3). PeaceHealth moved for a protective order based on the statute, contending that the information in the database is protected because it is "derived from incident reports, which are themselves quality assurance and peer review documents."
¶ 8 The trial court at first denied the motion. On April 30, 2009, the court ordered the hospital to designate an agent to review the quality assurance records and then to disclose "underlying facts and explanatory circumstances charted in hospital records relating to alleged injuries, complications, malfunctions or adverse events associated with any IV infusions." The only condition was that no records be disclosed that were "created specifically for, and collected and maintained by a quality improvement committee." After considering PeaceHealth's motion for reconsideration, however, the trial court reversed itself and concluded that the statute prohibits any disclosure arising from the use of the quality assurance database:
The court's order of April 30, 2009 authorized access to the relevant, factual complaints and related information in order to balance the competing interests at stake. However reasonable or practical such an accommodation may be, it appears to be contrary to the language of RCW 70.41.200(3).
It is unfortunate that a more practical solution allowing plaintiff relevant discovery is unavailable, but the plain language of RCW 70.41.200(3) compels the conclusion that any kind of disclosure, whether of committee opinion or underlying factual complaints, shall not be disclosed. Therefore, on further review and reconsideration, the court is persuaded that the Order of April 30, 2009 must be reversed.
¶ 9 Lowy asks this court to vacate the order granting reconsideration and to reinstate the order of April 30, 2009. Because a question of statutory interpretation is involved, our review is de novo. Cedell v. Farmers Ins. Co. of Wash., 157 Wash.App. 267, 272, 237 P.3d 309 (2010).
¶ 10 The court's purpose in interpreting a statute is to discern and implement the intent of the legislature. The first inquiry is whether, looking to the entire statute in which the provision is found and to related statutes, the meaning of the provision in question is plain. If so, the court's inquiry ends. But if the statute is susceptible to more than one reasonable interpretation, it is ambiguous. In that case, the court may resort to statutory construction, legislative history, and relevant case law. Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., 168 Wash.2d 421, 432-33, 228 P.3d 1260 (2010).
¶ 11 Title 70 RCW concerns public health and safety. Chapter 70.41 RCW addresses hospital licensing and regulation. The primary purpose of the chapter is to "promote safe and adequate care of individuals in hospitals through the development, establishment and enforcement of minimum hospital standards for maintenance and operation." RCW 70.41.010. The quality improvement statute, RCW 70.41.200, requires every hospital to "maintain a coordinated quality improvement program for the improvement of the quality of health care services rendered to patients and the identification and prevention of medical malpractice." RCW 70.41.200(1). The statute requires hospitals to create quality improvement committees to monitor and review the performance of their *10 staff, including the "maintenance and continuous collection of information concerning the hospital's experience with negative health care outcomes and incidents injurious to patients." RCW 70.41.200(1)(e). According to the provision under review, such records "are not subject to review or disclosure." RCW 70.41.200(3).
¶ 12 Plainly, the statute prevents the hospital from disclosing the quality assurance records themselves or allowing persons outside the hospital to review them. The question, however, is whether the statute likewise prevents the hospital itself from conducting an internal review to facilitate the location of hospital records that were not created specifically for the quality improvement committee and that are maintained elsewhere in the hospital. The statute does not expressly draw a distinction between internal and external review. But to interpret it as preventing all hospital personnel from reviewing the contents of the database would frustrate the very purpose for which the quality assurance committee gathered the records in the first place. Indeed, the hospital has already conducted an internal review of the database, as shown by a declaration stating that hospital personnel examined it and determined that it contained no responsive, nonprivileged documents.
¶ 13 Because it is not reasonable to interpret the statute as containing an outright prohibition on internal review, we conclude the statute is most reasonably interpreted simply as prohibiting review of committee records by persons outside the hospital. This interpretation is supported by the Supreme Court's opinion interpreting a similar statute in Coburn v. Seda, 101 Wash.2d 270, 276, 677 P.2d 173 (1984), and it is also supported by the legislative history of RCW 70.41.200.
¶ 14 The statute addressed in Coburn was RCW 4.24.250, which protects records created by regularly constituted committees that evaluate the quality of patient care in hospitals or similar institutions. Because it is a statute in derogation of both the common law and the general policy favoring discovery, RCW 4.24.250 "is to be strictly construed and limited to its purposes." Coburn, 101 Wash.2d at 276, 677 P.2d 173. The court explained that the purpose of the protection from discovery afforded by RCW 4.24.250 is to encourage the quality review process, based on the theory that external access to the committee's work stifles the candor that is necessary to engage in constructive criticism:
Policies favoring both discovery immunities and evidentiary privileges underlie RCW 4.24.250. The discovery protection granted hospital quality review committee records, like work product immunity, prevents the opposing party from taking advantage of a hospital's careful self-assessment. The opposing party must utilize his or her own experts to evaluate the facts underlying the incident which is the subject of suit and also use them to determine whether the hospital's care comported with proper quality standards.
The discovery prohibition, like an evidentiary privilege, also seeks to protect certain communications and encourage the quality review process. Statutes bearing similarities to RCW 4.24.250 prohibit discovery of records on the theory that external access to committee investigations stifles candor and inhibits constructive criticism thought necessary to effective quality review.
Coburn, 101 Wash.2d at 274-75, 677 P.2d 173; see also Anderson v. Breda, 103 Wash.2d 901, 905, 700 P.2d 737 (1985) ("The Legislature recognized that external access to committee investigations stifles candor and inhibits constructive criticism thought necessary to effective quality review.").
¶ 15 At the same time, the statute "may not be used as a shield to obstruct proper discovery of information generated outside review committee meetings." Coburn, 101 Wash.2d at 277, 677 P.2d 173. To illustrate the point, the court commented that information from original sources "would not be shielded merely by its introduction at a review committee meeting." Coburn, 101 Wash.2d at 277, 677 P.2d 173. The statute was meant to protect "substantive information about specific cases and individuals generated in the course of committee meetings." Coburn, 101 Wash.2d at 278, 677 P.2d 173.
*11 ¶ 16 PeaceHealth has not demonstrated that the legislative purpose of encouraging internal candor, open discussion, and constructive criticism will be served by an interpretation of the statute as banning internal review of the database to identify the records Lowy requests. The medical charts Lowy seeks were not created specifically for the quality assurance committee, are maintained external to committee files, and are undisputedly relevant and discoverable. In disclosing them, the hospital will not be required to disclose who participated in the review process concerning IV injuries, which incidents the hospital found relevant or important, or how it sorted, grouped, or otherwise organized those incidents. The hospital will not disclose any analysis, discussions, or communications that occurred during the proceedings of the quality assurance committee. The response to the discovery request will reveal no more than if the hospital had produced the medical records through a burdensome page-by-page search.
¶ 17 Legislative history also weighs in favor of a narrow interpretation of what is meant by the prohibition on "review or disclosure." The version of RCW 4.24.250 addressed in Coburn provided that the records of quality assurance committees "shall not be subject to subpoena or discovery proceedings in any civil action," with certain exceptions not relevant here. Former RCW 4.24.250(1)(2) (2004). In 2005, the legislature enacted an amending statute adding the prohibition on "review or disclosure" to RCW 4.24.250 (health care providers) and RCW 43.70.510 (health care institutions and medical facilities other than hospitals), as well as to the statute at issue in the present case, RCW 70.41.200 (hospitals). Laws of 2005, ch. 291, §§ 1-3. The vote was unanimous. SENATE JOURNAL, 59th Leg., Reg. Sess., at 1089 (Wash. 2005); HOUSE JOURNAL, 59th Leg., Reg. Sess., at 566 (Wash. 2005). According to a bill report, the 2005 amendment was supported by representatives of trial lawyers and hospitals. S.B. REP. on E.H.B. 2254, 59th Leg., Reg. Sess. (Wash. 2005). It is unlikely that the bill would have enjoyed such broad support if it had been intended to prohibit internal review as well as external review of quality assurance records. According to the summary of testimony in the bill report, the bill was designed to fill a gap in the earlier versions of these statutes. Before the 2005 amendment, the statute provided that quality assurance records were not subject to discovery or introduction into evidence "in any civil action." The purpose of the 2005 amendment was simply to ensure that the records could not be released to the public in some extrajudicial context, that is, outside of a civil action. S.B. REP. on E.H.B. 2254 (Wash. 2005).
¶ 18 In summary, the first order entered by the trial court satisfied Coburn's mandate that the statute be strictly construed and limited to its purposes, and it reflects an interpretation that is supported by legislative history. The hospital must deny review of its quality assurance records by outside persons, thereby preserving confidentiality of those records. But the statute may not serve as an artificial shield for information contained in ordinary medical records. We conclude that the hospital may review its quality assurance records for the limited purpose of identifying and producing these medical charts.
¶ 19 The order granting reconsideration is reversed. The original order is to be reinstated.
WE CONCUR: SPEARMAN and APPELWICK, JJ.