[No. 51169–1.   En Banc.   May 30, 1985.]

ROBERT ANDERSON, *Individually and as Personal Representative,* ET AL, *Petitioners,* v. URI W. BREDA, ET AL, *Respondents.*

*Peterson, Bracelin, Young, Putra & Fletcher, Inc., P.S.,* by *Jan Eric Peterson* and *Christopher E. Young,* and *Burns, Schneiderman & Davis,* by *Susan R. Davis,* for petitioners.

*Williams, Lanza, Kastner & Gibbs,* by *Gerald A. Palm* and *William H. Robertson,* for respondent Breda.

*Reed, McClure, Moceri & Thonn, P.S.,* by *Hugh A. McClure* and *Judy Lee Young,* for respondent Shorewood Osteopathic Hospital.

DORE, J.—This is a medical malpractice action brought by the surviving spouse of Florence Anderson, individually and as personal representative of the estate of Florence Anderson, and by Florence Anderson's children. The respondents are physicians whose attending care the petitioners allege was negligent, and Shorewood Hospital, which petitioners allege was negligent in the granting and maintaining of privileges for Dr. Uri Breda to practice at the hospital. In the course of discovery in this action, petitioners questioned Dr. Breda during a deposition regarding termination or suspension of any of his hospital privileges. Dr. Breda refused to answer these questions. The trial court concluded that these questions sought privileged information. It, therefore, entered an order to the effect that Dr. Breda did not have to answer deposition questions concerning termination or suspension of any of his hospital privileges. We vacate the trial court's order.

FACTS

In May of 1981, Florence Anderson's regular general physician referred her to Dr. Breda for a gall bladder operation. Dr. Breda admitted her to Shorewood Hospital for

this surgery, where he held privileges to practice medicine and surgery. Petitioners allege that several negligent errors were made over the next few days, causing Florence Anderson to have kidney failure and go into shock for over 19 hours, which condition was not properly or timely treated by the doctors or nurses. At the request of her family, the original referring physician visited her at Shorewood Hospital and immediately ordered her transferred to Swedish Hospital. She died within hours after her arrival. She never had the gall bladder surgery.

Petitioners allege that Dr. Breda was incompetent, used negligent medical judgment, failed to attend the patient, failed to respond to an emergency condition and attempted to practice medicine beyond his limitations. Petitioners further allege that Shorewood Hospital breached its duty of proper supervision of its medical staff in failing to deny or restrict Dr. Breda's hospital privileges when it knew or should have known of prior restrictions or termination of privileges at other hospitals.

During Dr. Breda's deposition, he was questioned concerning privileges at other hospitals. He refused to answer these questions, claiming privilege pursuant to the provisions of RCW 4.24.250.

Petitioners moved to compel Dr. Breda to answer the questions. The trial court ordered that Dr. Breda did not have to answer questions as to why his privileges at hospitals had been terminated or even whether they have been voluntarily or involuntarily terminated, concluding that he was afforded this protection by RCW 4.24.250. The Court of Appeals granted discretionary review. The case was then transferred to this court to aid in the prompt and orderly administration of justice.[1]

ISSUE

Whether the trial court correctly interpreted RCW 4.24-

---

[1]Although petitioners later also submitted interrogatories and requests for production, they and the objections made thereto are not properly before this court.

.250 to preclude a medical malpractice plaintiff from inquiring in discovery from a defendant doctor concerning termination of the doctor's hospital privileges.

## DECISION

Resolution of the issue is dependent on the scope of the immunity from discovery granted in RCW 4.24.250. The statute provides:

> Any health care provider as defined in RCW 7.70.020 (1) and (2) as now existing or hereafter amended who, in good faith, files charges or presents evidence against another member of their profession based on the claimed incompetency or gross misconduct of such person before a regularly constituted review committee or board of a professional society or hospital whose duty it is to evaluate the competency and qualifications of members of the profession, including limiting the extent of practice of such person in a hospital or similar institution, or before a regularly constituted committee or board of a hospital whose duty it is to review and evaluate the quality of patient care, shall be immune from civil action for damages arising out of such activities. The proceedings, reports, and written records of such committees or boards, or of a member, employee, staff person, or investigator of such a committee or board, shall not be subject to subpoena or discovery proceedings in any civil action, except actions arising out of the recommendations of such committees or boards involving the restriction or revocation of the clinical or staff privileges of a health care provider as defined above.

As can be seen, this statute provides several protections. First, the statute provides immunity from civil liability to health care providers who file charges or present evidence against another member of the profession in connection with a competency review by a board or review committee. Dr. Breda claims no such immunity, nor could he, because he does not claim that he filed charges or presented evidence against another member of his profession.

Second, the statute makes privileged (or protects from discovery) the "proceedings, reports, and written records" of quality review committee proceedings, along with the

records of committee members and agents. It is this privilege that Dr. Breda seeks to invoke here. The question thus becomes whether the fact that a physician's hospital privileges have been restricted, revoked, or suspended as a result of such peer review proceedings is privileged under this language of the statute.

The scope of the immunity from discovery granted by RCW 4.24.250 was recently addressed in *Coburn v. Seda*, 101 Wn.2d 270, 677 P.2d 173 (1984). We held in *Coburn* that the statute's application to particular discovery requests is determined by deciding whether disclosure would interfere with the statutory purpose. *Coburn*, at 278. RCW 4.24.250, and similar statutes prohibiting discovery of hospital quality review committees, represent a legislative choice between competing public concerns. The Legislature recognized that external access to committee investigations stifles candor and inhibits constructive criticism thought necessary to effective quality review. The immunity from discovery of committee review embraces this goal of medical staff candor in apprising their peers to improve the quality of in–hospital medical practice at the costs of impairing malpractice plaintiffs access to evidence revealing the competency of a hospital's staff. *Coburn*, at 275. *See also Matchett v. Superior Court*, 40 Cal. App. 3d 623, 115 Cal. Rptr. 317 (1974). Because this immunity from discovery is in derogation of both the common law and the general policy favoring discovery, it is to be strictly construed and limited to its intended purpose. *Coburn*, at 276. The burden of establishing entitlement to nondisclosure rests with the party resisting discovery.

Application of RCW 4.24.250 is only appropriate when two components are present. First, RCW 4.24.250 is only applicable if the information sought has been generated in a regularly constituted committee or board of the hospital whose duty it is to review and evaluate the quality of patient care or the competency and qualifications of members of the profession. *Coburn*, at 277. In determining whether a hospital activity is properly classified as a regu-

larly constituted quality review committee, the organization and function of the committee may be examined in light of the guidelines and standards of accreditation bodies and the organizational precepts of the hospital itself. Whether the activity is concerned with retrospective review or current care is an additional consideration. *Coburn,* at 278.

The second component is that only the proceedings, reports and written records of such regularly constituted committees are immune from discovery. Petitioners are not deprived of the opportunity to develop through sources other than the records of the committee proceeding the names of those who have knowledge or information concerning the subject matter of this suit. Nor are petitioners deprived of the opportunity to take appropriate discovery from those persons having personal knowledge or information of facts relevant to the case. At most, petitioners are deprived only of the opportunity to examine the record of testimony which was given at the committee proceedings and the findings of the committee. *See Danklef v. Wilmington Med. Ctr.,* 429 A.2d 509, 511 (Del. Super. Ct. 1981). We find support for this reasoning in cases from other jurisdictions construing statutes similar to RCW 4.24.250. In *Texarkana Mem. Hosp., Inc. v. Jones,* 551 S.W.2d 33, 34 (Tex. 1977), the court held that presentation of evidence or opinion to a hospital committee during its deliberations does not thereby make that evidence or opinion privileged if offered or proved by means apart from the record of the committee. The effect of the statute is simply to prevent the discovery and use of the records and proceedings of the committee. *Accord, Kalish v. Mount Sinai Hosp.,* 270 N.W.2d 783 (Minn. 1978); *Marchand v. Henry Ford Hosp.,* 398 Mich. 163, 247 N.W.2d 280 (1976); *Eubanks v. Ferrier,* 245 Ga. 763, 267 S.E.2d 230 (1980). Similarly, the California Court of Appeals has held that the discovery immunity does not embrace the files of the hospital administration. These administrative records are discoverable to the extent they do not contain the record of immune proceedings. *See Schulz v. Superior Court,* 66 Cal.

App. 3d 440, 136 Cal. Rptr. 67 (1977).

Respondents contend that information as to whether Dr. Breda's hospital privileges have ever been suspended or revoked is protected by the statute because such an action arises out of and involves peer review committee proceedings. The respondents argue that to permit access to the results of a peer review committee would undermine the effectiveness and thoroughness of review committee proceedings. We disagree.

█ Although the extent of a physician's hospital privileges may be determined by what occurs within a quality review committee, the fact that a physician's privileges are restricted, suspended or revoked is not properly subject to the protections of the statute. The goal and fundamental purpose of the statute is open discussion during committee investigations. Open discussion is not inhibited by permitting discovery of the effect of the committee proceedings. The purpose of this statute is to keep peer review studies, discussions, and deliberations confidential. A facial examination of the statute reveals that it is not designed to obstruct discovery as to whether a physician's privileges had been revoked or suspended.

> The statute may not be used as a shield to obstruct proper discovery of information generated outside review committee meetings. The statute does not grant an immunity to information otherwise available from original sources. For example, any information from original sources would not be shielded merely by its introduction at a review committee meeting. Further, the hospital must identify all persons who have knowledge of the underlying event which is the basis of the malpractice action regardless of whether those persons presented evidence to a hospital review committee.

(Footnote omitted.) *Coburn,* at 277.

Additionally, if the final decision to restrict, revoke, or suspend a physician's hospital privileges is made by an administrator or entity other than a peer review committee, the records of that entity or individual are discoverable to the extent they do not contain the record of a quality

review committee.

It is apparent that the trial court's order is too sweeping. Not only did the respondent fail to establish the existence of a regularly constituted quality review committee, the deposition of Dr. Breda did not seek the "proceedings, reports or written records" of a quality review committee. Petitioners merely sought to determine whether Dr. Breda's hospital privileges had been revoked, suspended or restricted.

By its clear language, the discovery privilege granted in RCW 4.24.250 does not extend to such information.

### CONCLUSION

The privilege from discovery afforded hospital quality review committees does not extend to discovery from a defendant doctor concerning termination, suspension or restriction of the doctor's hospital privileges. The order of the trial court is vacated and the case is remanded for further proceedings not inconsistent with this decision.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.