[No. 52140-9. En Banc. April 3, 1986.]

JAMES G. TUMELSON, ET AL, *Appellants,* v. BARRY FRANK TODHUNTER, ET AL, *Respondents.*

*Joseph T. Mijich* and *John P. World,* for appellants.

*Williams, Lanza, Kastner & Gibbs,* by *Reed P. Schiffer-man,* for respondents.

DORE, J.—This case concerns an action for personal injuries arising from an automobile accident involving an epileptic driver. The jury awarded a verdict in favor of the appellants against the epileptic driver, but denied any relief against the respondent medical defendants. We affirm.

## PLEADINGS

The appellants James and Eleanor Tumelson were injured in an automobile accident that occurred April 15, 1978. The defendant, Barry Todhunter, while driving an automobile owned by his mother experienced an epileptic seizure, crossed the center line and collided head on with the Tumelsons' automobile. The appellants sued Barry Todhunter for negligence, his mother under the family car doctrine, and later amended the complaint to include

Group Health Cooperative of Puget Sound and Dr. Robert Monroe. Appellants in their third amended complaint alleged the medical defendants (1) furnished false and misleading information in completing a certificate of physical examination which was filed with the State in October 1977, and (2) failed to warn Barry Todhunter on April 10, 1978, he should not drive due to an increase in his seizure activity.

## MEDICAL HISTORY

Barry Todhunter's epilepsy was first diagnosed in 1971. At that time he was 15 years old and had a learner's permit, but no driver's license. He was told by Dr. Monroe, the Todhunters' family physician for a number of years, that he could not drive for 2 years to make sure the epilepsy was stabilized.

In 1973, because Barry had done well on his medication therapy, he received a driver's license. Pursuant to the statutory scheme found in RCW 46.20.041, Barry obtained this license after completion of a certificate of physical examination filed by medical defendants on his behalf.

At the time Todhunter's epilepsy was diagnosed (1971), again when he got his first driver's license (1973), and again in February 1975 when Dr. Monroe wrote a letter to Nationwide Insurance Company, Dr. Monroe discussed with Barry the general rules of driving for an epileptic. These general rules include that the patient should not drive for a period of time (about 6 months) if he had been having seizures, to always take one's medication, and to avoid alcohol with the medication as it may cause drowsiness.

These general rules were discussed with Mr. Todhunter again when Dr. Seiffert, a neurologist practicing at Group Health, first evaluated Barry on June 5, 1973.

On April 22, 1977, approximately 1 year before the accident in question, Barry had a minor accident in which he hit another car from behind. It was not clear if the accident was due to a seizure or whether he was merely distracted.

In any event, Dr. Monroe discussed driving with Barry and took a more cautious course by telling Barry not to drive until the situation clarified.

On September 12, 1977, Dr. Monroe referred Barry to Dr. Seiffert for a neurological evaluation. After noting on the chart, "he [Barry Todhunter] states that one morning last week he awoke with soreness of his tongue which is usually a sign that he has had a seizure in his sleep," Dr. Seiffert was not convinced Todhunter had been having seizures and indicated: "I am not convinced that his seizure disorder is uncontrolled on the Dilantin and Phenobarbital." Exhibit 5.

In October 1977, Barry's license was due to expire. He obtained a form "Certificate of Physical Examination" from the Washington Department of Licensing, and asked Dr. Monroe to complete the form for him. Dr. Monroe completed the form on October 20, 1977, and the form was then filed with the Department of Licensing. In renewing the license, the Department of Licensing relied on the information furnished in the certificate.

In December 1977, Barry Todhunter was seen at Group Health regarding a sprained ankle which was unrelated to any seizure activity. At that time he gave no history of having any problems regarding seizures. Furthermore, Barry had a job, was steadily employed, and things were generally looking good for him.

On April 10, 1978, Barry came directly to Dr. Seiffert, rather than Dr. Monroe, and complained of seizure activity. Based on discussions with the patient and his examination, Dr. Seiffert concluded he was having approximately two seizures a week. This is the first indication of any event arousing suspicions of seizure activity since September 12, 1977. In light of this changed condition, Dr. Seiffert prescribed Mysoline and advised Barry that it could make him drowsy. Dr. Seiffert quite candidly testified he didn't specifically remember if he discussed driving with Barry at that time. Nonetheless, it was clear in the doctor's mind that they had discussed driving so many times before that

Barry certainly knew he should not be driving.

On April 15, 1978, Barry, with his mother as a passenger, suffered a seizure which resulted in the subject automobile accident.

### TRIAL PROCEDURE

Prior to the commencement of trial, Barry and his mother attempted to waive the prohibition of RCW 46.20-.041(1) pertaining to admissibility into evidence of the certificate of physical examination. At the beginning of trial, the medical defendants presented a motion in limine seeking to exclude the certificate from evidence and all mention of the certificate during trial. The motion was granted. At trial, the Tumelsons offered the certificate as evidence and attempted to prove legal and medical standards for granting licenses to epileptics. These proofs were rejected. Nonetheless, evidence was introduced that an epileptic patient must be seizure free for 6 months to obtain a driver's license, and that the medical defendants assisted Todhunter in renewing his driver's license by submitting the certificate of physical examination to the State.

The appellants requested amendment of their complaint a fourth time to "conform to the proof." This amended complaint would have alleged *negligence* on the part of the medical defendants in assisting Barry in obtaining his license renewal. The trial court denied the motion, and further held that the appellants' expert could not testify as to standards for reasonably prudent physicians in assisting epileptics to obtain driver's licenses. The appellants' expert did, however, testify that in his opinion the tongue–biting episode of September 12, 1977, was an indication of seizure activity which would require restrictions from driving for 6 months. The expert also testified that he would defer to the patient's doctors as to whether this episode was a true indication of a seizure.

The jury awarded judgment in favor of the medical defendants.

## ADMISSIBILITY OF CERTIFICATE

Appellants contend the trial court erroneously excluded from evidence the physician's certificate of physical examination. RCW 46.20.041(1) provides as follows:

The department shall permit any person suffering from any physical or mental disability or disease which may affect that person's ability to drive a motor vehicle, to demonstrate personally that notwithstanding such disability or disease he or she is a proper person to drive a motor vehicle. The department may in addition require such person to obtain a certificate showing his or her condition signed by a licensed physician or other proper authority designated by the department. The *certificate shall be for the confidential use* of the director and the chief of the Washington state patrol and for such other cognizant public officials as may be designated by law. It *shall be exempt from public inspection* and copying notwithstanding the provisions of chapter 42.17 RCW. *The certificate may not be offered as evidence in any court except when appeal is taken from the order of the director suspending, revoking, canceling, or refusing a vehicle driver's license.*

(Italics ours.) The statute is quite clear; "[t]he certificate may not be offered as evidence in any court . . ." The stated exceptions are not relevant to this action. Appellants correctly contend that the statute is in derogation of both common law and general policy favoring discovery and thus is to be strictly construed and limited to its purposes. *See Anderson v. Breda,* 103 Wn.2d 901, 905, 700 P.2d 737 (1985); *Coburn v. Seda,* 101 Wn.2d 270, 276, 677 P.2d 173 (1984). Appellants argue that the purpose of the statutory prohibition is maximum candor on the part of the medical *patient* in divulging information concerning his medical condition. Thus, the limited purpose of the prohibition remains intact if the patient waives the prohibition.

This argument lacks merit. The prohibition is not stated in the terms of a privilege, but as an absolute prohibition with enumerated exceptions not herein relevant. In contrast to the prohibition of RCW 46.20.041, the normal patient–physician privilege may be waived by consent of

the patient. *See* RCW 5.60.060(4). Additionally, the purpose of RCW 46.20.041, and similar provisions in other jurisdictions, reflects a common concern of highway safety by encouraging physicians to report completely and truthfully regarding the fitness of their patients to drive without fear of subsequent liability. *See* Uniform Vehicle Code § 6–119 (1979). The patient should not be entitled to waive a statutory prohibition intended to shield the physician from potential civil liability.

The trial court appropriately excluded the certificate of physical examination from admission as evidence.

In a further attempt to introduce the contents of the certificate, the appellants made an offer of proof through testimony of Debra Kay. Ms. Kay is the lead clerical supervisor of the driver improvement division of the Department of Licensing. It is ultimately her responsibility to determine whether an applicant qualifies for a driver's license. When the trial court excluded the certificate from evidence, appellants sought to show by testimony of Debra Kay that (1) an epileptic must be seizure free for a 6–month period to be eligible for a driver's license, (2) Dr. Monroe furnished information to the Department of Licensing in reference to Barry's epileptic condition, (3) the Department of Licensing relied solely upon the information from Dr. Monroe, and (4) a driver's license was issued to Barry. A reasonable inference from this testimony would have been that Dr. Monroe had certified that Barry's condition was within the guidelines of the Department of Licensing. The medical defendants objected on the basis that appellants were attempting to get the certificate into evidence indirectly which was prohibited by statute (RCW 46.20.041(1)). The court agreed.

■ Appellants contend that the prohibition against admission of the certificate does not prohibit testimony of its contents proved by independent means. In *Coburn v. Seda*, 101 Wn.2d 270, 677 P.2d 173 (1984), this court held that prohibition of discovery of hospital quality review proceedings does not grant an immunity to information other-

wise available from original sources. *Coburn*, at 277. This does not imply, however, that testimony or materials originating in the proceedings are subject to discovery through testimony of a person privy to the proceedings. *See Anderson v. Breda*, 103 Wn.2d 901, 906, 700 P.2d 737 (1985); *Coburn*, at 277.

As the certificate is inadmissible, appellants are barred from introducing any evidence regarding the contents of the certificate. Thus, Ms. Kay's testimony must be confined to information generated outside the certificate. The offer of proof appears to be a combination of both admissible and inadmissible evidence. Evidence regarding Dr. Monroe's submission of the certificate is inadmissible, whereas testimony establishing the legal requirements for obtaining a license is admissible. Thus, the trial court may have erred in rejecting the entire offer of proof.

The decision of the trial court is nonetheless sustainable due to the repetitious and cumulative nature of the proffered evidence. It was firmly established by the testimony of Barry Todhunter, Dr. Monroe, Dr. Seiffert, and Dr. Rothstein that Barry had a driver's license; a patient must be seizure free for 6 months before he may drive; and Dr. Monroe helped Barry obtain a driver's license. Exclusion of evidence is not prejudicial where the evidence is merely cumulative. *Sutton v. Mathews*, 41 Wn.2d 64, 247 P.2d 556 (1952). Ms. Kay's testimony adds nothing to the case and would not have affected the jury's verdict; its exclusion at best was harmless error.

### EXCLUSION OF IRRELEVANT EVIDENCE

Appellants attempted to inquire of their expert, Dr. Rothstein, whether a reasonably prudent physician in the state of Washington would have assisted Barry Todhunter to obtain a driver's license. At the time the question was asked, the third amended complaint alleged the medical defendants

furnished false and misleading information concerning the medical condition of defendant Barry Frank Tod-

hunter to Department of Licenses, State of Washington, knowing such information would be relied upon in granting a driver's license to defendant Barry Frank Todhunter . . .

Clerk's Papers, at 49.

During trial on November 3, 1983, just prior to Dr. Rothstein's testimony (in the absence of the jury), appellants, apparently anticipating a problem with their forthcoming proof, attempted to amend the complaint to add specifications of negligence:

"Defendants Robert B. Monroe, M.D. and Group Health Cooperative of Puget Sound, Inc. assisted Barry Todhunter to obtain a motor vehicle drivers license, when in the exercise of reasonable care they knew or should have known his condition would not permit safe driving."

Verbatim Report of Proceedings, at 2, 3.

Medical defendants objected, stating this would be the fourth amended complaint and,

this does not conform to the evidence at this time which has been presented. There is no evidence that he did not do what he should have done.

So at this time it's at least premature and we would at least object because it's untimely as well.

Verbatim Report of Proceedings, at 3. The medical defendants' objections were sustained and the motion to amend was denied.

At the time Dr. Rothstein testified, the issues were properly limited to whether defendants supplied "false and misleading information" to the Department of Licensing, and whether they should have told Mr. Todhunter not to drive on April 10, 1978. There was no allegation of negligence regarding the certificate.[1]

The trial court's decision was proper and not an abuse of discretion. The question of what a reasonable and prudent physician would do under similar circumstances is *irrele-*

---

[1]Medical defendants had previously been granted a motion in limine to limit all evidence and argument to the issues framed in the complaint and in answers to interrogatories.

*vant* to the issues framed by the complaint which speak only to whether the medical defendants furnished "false and misleading information." Irrelevant testimony should be excluded. ER 402.

Additionally, appellants failed to make an offer of proof and there is no indication of what Dr. Rothstein intended to say to this line of questioning. This court should not speculate as to what his testimony would have been. Without an offer of proof there is no basis to find reversible error. *See Smith v. Seibly,* 72 Wn.2d 16, 431 P.2d 719 (1967).

### CONCLUSION

1. The trial court correctly excluded from introduction into evidence the October 1977 certificate, as RCW 46.20-.041 provides that such certificate "may not be offered as evidence in any court . . ."

2. It was not an abuse of discretion to exclude the testimony of Debra Kay (Department of Licensing) because her testimony either related to the excluded certificate or was cumulative to facts adequately established in the record by other witnesses.

3. It was not error for the trial judge to restrict Dr. Rothstein's testimony as to standard of care, because such testimony was irrelevant to the issues before the court. In any event appellants failed to preserve their point on appeal by failing to make the required offer of proof.

We affirm.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.