[Nos. 9741–2–III; 10127–4–III.   Division Three.   July 11, 1991.]

DOUGLAS RAGLAND, ET AL, *Appellants,* v. ISAAC LAWLESS, ET AL, *Respondents.*

DOUGLAS RAGLAND, ET AL, *Respondents,* v. THE SPOKANE COUNTY MEDICAL SOCIETY, ET AL, *Appellants.*

*Cheryl C. Mitchell,* for Douglas Ragland, et al.

*Kelly P. Corr, Heidi A. Irvin,* and *Bogle & Gates,* for Isaac Lawless, et al.

*Jerome J. Leveque, Morrison & Leveque,* and *Roger E. Metz,* for Spokane County Medical Society.

*Kenneth O. Eikenberry, Attorney General,* and *Melissa Cain, Assistant,* for DSHS.

*William R. Hickman, Heather Houston,* and *Reed McClure; Jeffrey Smith* and *Rosenow, Hale & Johnson,* for Washington State Medical Association.

GREEN, C.J.—Two actions are consolidated in this appeal. The first action was brought by Dr. Douglas Ragland to recover damages against the Spokane County Medical Society (SCMS) and Dr. Isaac Lawless, his former treating physician, who was chairman of the SCMS's peer review committee investigating him for alleged violations of a Medicaid contract. This action was dismissed on summary judgment and Dr. Ragland appeals.

The second action was brought by Dr. Ragland against the same parties, the Department of Social and Health Services (DSHS) and the Washington State Medical Association (WSMA) to declare his right to discover the records relating to his review by the peer review committee. The court allowed the discovery. The SCMS, DSHS, WSMA and Dr. Lawless appeal.[1]

Before moving to Spokane, Dr. Ragland was engaged in the general practice of medicine in a rural community. In 1978 through 1979 he consulted Dr. Lawless, a Spokane psychiatrist, for treatment of personal problems arising from the pressures of his rural practice. After he moved to Spokane, he entered into a Medicaid contract with DSHS. During October 1983, DSHS informed him that he was requiring substantially more laboratory tests for his

---

[1]The Department of Social and Health Services and the Washington State Medical Association adopt by reference the brief of the Spokane County Medical Society pursuant to RAP 10.1(g).

patients than the area average. Dr. Ragland responded that he performed the tests as a precaution against malpractice claims and although he would still order the tests, he would no longer bill DSHS for them. Unsatisfied with that response, DSHS contacted the WSMA to initiate a peer review of Dr. Ragland's Medicaid practice. WSMA referred the matter to SCMS on February 15, 1984. At that time, Dr. Lawless was chairman of the peer review committee.

The committee met on June 21. Dr. Ragland received notice and attended. He was not permitted to present any evidence. The committee concluded Dr. Ragland had overutilized laboratory tests. While Dr. Lawless did not vote on the matter, as chairman he wrote a letter responding to DSHS questions:

1. Is the large number of medical tests being performed by Dr. Ragland medically necessary?
The answer is no.
. . . .
2. Does the frequent repetition of identical laboratory tests on the same individual over a prolonged period of time indicate ineffective or inappropriate treatment of the medical condition by Dr. Ragland?
The answer is yes.
. . . .
3. Does Dr. Ragland's voluminous use of laboratory services meet community standard?
The answer is no.

The letter recommended the matter be referred to the Washington State Medical Disciplinary Board.

On October 26, Dr. Ragland received a letter from DSHS that his contract *would be* terminated on November 23, 1984, based on the findings of the peer review committee and DSHS's separate review of Dr. Ragland's medical practices.[2] Dr. Ragland's request for a hearing before DSHS

---

[2]The letter stated: "In separate reviews of your medical practice conducted by the division and the Spokane County Medical Society, it was determined that you have been reimbursed for medical services which were excessive and not medically necessary." When Dr. Ragland asked to be provided the reasons for his termination, DSHS responded:

"The decision to terminate your contract was based on the findings of the Spokane County Medical Society, in conjunction with our previous review and

resulted in a stay of the termination. He then challenged Dr. Lawless's participation in the peer review and requested copies of the committee's proceedings and records. Thereupon, Dr. Lawless withdrew from the committee and requested the Washington State Medical Disciplinary Board not to consider his earlier letter. DSHS informed Dr. Ragland it would cease any further action if he withdrew from his Medicaid contract.

Without Dr. Ragland's knowledge, a second peer review committee was formed by SCMS and concluded Dr. Ragland's laboratory tests were overutilized and were neither medically necessary nor in conformity with community standards. On June 12, 1985, Dr. Ragland notified DSHS he was terminating his Medicaid agreement.

Without pursuing his administrative remedies, Dr. Ragland in 1986 commenced an action for damages against Dr. Lawless and SCMS. He alleged Dr. Lawless provided him negligent health care, breached a contract to provide effective, confidential psychiatric care, violated his duty not to disclose, and also alleged the tort of outrage. Dr. Ragland's action against SCMS stated the society had "negligently and outrageously failed to follow the law applicable to peer review."

Dr. Ragland then sought to discover both peer review records. Claiming immunity under RCW 4.24.250, SCMS refused to comply with the discovery request. However, Dr. Lawless voluntarily delivered to Dr. Ragland committee records involving his participation on the committee and answered the requested interrogatories. Dr. Ragland's motion to compel discovery was denied, the court stating the "[i]ssue of privilege under RCW 4.24.250 is a matter for separate litigation." Motions for summary judgment were then filed by SCMS and Dr. Lawless.

---

correspondence. This history, in our view, warrants a conclusion that the health and safety of Medical Assistance recipients was endangered through submission to unnecessary laboratory tests, and that your contract should be terminated immediately."

Before these motions were heard and without moving for a continuance or seeking discretionary review of the denial of discovery, Dr. Ragland initiated a declaratory judgment action to determine his right to discover the peer review records. Summary judgment of dismissal was granted in favor of SCMS and Dr. Lawless in the action for damages. The parties then filed opposing motions for summary judgment in the declaratory action. The court ruled that under RCW 4.24.250, Dr. Ragland was not precluded from discovery of the peer review committee records and proceedings. Dr. Ragland appeals from the summary judgment entered against him in his action for damages, and SCMS, DSHS, WSMA and Dr. Lawless appeal from the order granting discovery in the declaratory judgment action. These appeals have been consolidated for review.

## ACTION FOR DAMAGES

Dr. Ragland contends the court erred in granting a summary dismissal of his action for damages. He argues that even though the basic facts are not in dispute, there are material issues of fact, which include whether (1) Dr. Ragland ceased his practice of medicine as a direct result of the peer review committee's actions; (2) Dr. Lawless breached his duty by serving on the peer review committee and did not meet the standard of care of a treating physician; (3) Dr. Lawless lacked good faith by serving on the peer review committee; (4) Dr. Ragland was aware of the second peer review committee at the time he withdrew from his agreement with DSHS; and (5) Dr. Ragland was denied access to potentially favorable information. Our review of the record reveals the court did not err in granting summary judgment.

Summary judgment will be granted when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); CR 56(c). A material fact is one upon which the outcome of the litigation depends. *Estate of Celiz v. PUD 1*, 30 Wn. App.

682, 684, 638 P.2d 588 (1981). The initial burden to prove there is no genuine issue of material fact is on the moving party. *Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 201, 633 P.2d 122 (1981), *review denied,* 96 Wn.2d 1025 (1982). The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue requiring trial. *Rathvon,* at 201. The party opposing summary judgment must respond with more than conclusory allegations, speculative statements or argumentative assertions of the existence of unresolved factual issues. *Ruffer v. St. Frances Cabrini Hosp.,* 56 Wn. App. 625, 628, 784 P.2d 1288, *review denied,* 114 Wn.2d 1023 (1990). The court considers all facts and reasonable inferences therefrom in a light most favorable to the nonmoving party.

Here, a review of the record does not reveal disputed issues of material fact. Dr. Ragland's letter to DSHS stated he "wished to terminate" his Medicaid provider agreement. However, whether he was terminated or withdrew is not a material issue concerning whether Dr. Lawless breached the standard of care. Although Dr. Ragland contends Dr. Lawless was his treating physician, this would not create a material issue of fact as to his service on the peer review committee in light of the fact that Dr. Lawless did not vote and had not treated Dr. Ragland for several years. While Dr. Lawless admits he treated Dr. Ragland in 1978 through 1979, the record does not indicate any further treatment. Dr. Ragland's claim that Dr. Lawless lacked good faith is not supported by a factual affidavit, rather only conclusory and speculative assertions. This is not sufficient to defeat a motion for summary judgment. *Ruffer,* at 628. His awareness of the second peer review committee was immaterial since Dr. Lawless did not serve on that review. Dr. Ragland's claim he was denied potentially favorable information by not having access to peer review committee records is dealt with in our review of the declaratory action. The court did not err in finding there were no genuine issues of material fact.

DECLARATORY ACTION

Dr. Lawless, DSHS, WSMA and SCMS appeal from the grant of declaratory relief to Dr. Ragland and contend the court erred by failing to dismiss Dr. Ragland's declaratory action for discovery. They assert the express language of RCW 4.24.250 provides immunity:

Any health care provider . . . who, in good faith, files charges or presents evidence against another member of their profession based on the claimed incompetency or gross misconduct of such person before a regularly constituted review committee . . . *shall be immune from civil action for damages arising out of such activities. The proceedings, reports, and written records of such committees or boards, or of a member, employee, staff person, or investigator of such a committee or board, shall not be subject to subpoena or discovery proceedings in any civil action, except actions arising out of the recommendations of such committees or boards involving the restriction or revocation of the clinical or staff privileges of a health care provider as defined above.*

(Italics ours.) We agree.

■■ This statute provides several protections, including immunity from civil liability, to health care providers who present evidence against another member of the profession in connection with a competency review. *Anderson v. Breda,* 103 Wn.2d 901, 904, 700 P.2d 737 (1985). The burden of establishing entitlement to nondisclosure rests with the party resisting discovery. *Anderson,* at 905. Since the statute is in derogation of the common law, it is to be strictly construed and limited to its purpose. *Coburn v. Seda,* 101 Wn.2d 270, 276, 677 P.2d 173 (1984). The application of RCW 4.24.250 to particular discovery requests is determined by deciding whether disclosure would interfere with the statutory purpose. *Anderson,* at 905. As stated in *Anderson,* at 905:

RCW 4.24.250, and similar statutes prohibiting discovery of hospital quality review committees, represent a legislative choice between competing public concerns. The Legislature recognized that external access to committee investigations

stifles candor and inhibits constructive criticism thought necessary to effective quality review.[3]

Although the statute provides that proceedings, reports and written records of a peer review committee are not subject to discovery, it excepts those "*actions arising out of committee recommendations which involve restriction or revocation of staff privileges.*" (Italics ours.) *Coburn,* at 273. Accordingly, all civil actions *not* falling within the specific exception are subject to the statutory provision shielding certain information from discovery. *Coburn,* at 273. Thus, the court erred when it applied the exception and allowed discovery.[4]

The recommendation of the SCMS peer review committee did not involve restriction or revocation of staff privileges. Instead, it involved Dr. Ragland's termination as a Medicaid provider for DSHS. At most this would lead to cessation of a source of payment for medical services, not the termination of clinical or staff privileges. Dr. Ragland's medical license was neither suspended nor revoked. The legislative history of RCW 4.24.250 indicates that hospital

---

[3]Statutes bearing similarity to RCW 4.24.250 have prohibited discovery of records on the theory that external access inhibits constructive criticism thought necessary to effective quality review. *See, e.g., Tucson Med. Ctr., Inc. v. Misevch,* 113 Ariz. 34, 545 P.2d 958 (1976); *Matchett v. Superior Court,* 40 Cal. App. 3d 623, 115 Cal. Rptr. 317 (1974); *Mennes v. South Chicago Comm'ty Hosp.,* 100 Ill. App. 3d 1029, 427 N.E.2d 952 (1981).

[4]Here, in ruling in favor of Dr. Ragland on the issue of discovery the court stated:

"The legal issue presented is whether Dr. Ragland is precluded by the provisions of RCW 4.24.250 from access to the records and proceedings of the two Peer Review Committees.

". . . .

"The statute indicates that it is the proceeding, reports, and records of committees formed to receive evidence on a charge of 'claimed incompetency or gross misconduct' brought by a health care provider against another member of their profession, that is the subject of the discovery immunity or privilege. . . . [H]ere there was no allegation by any health care provider of incompetency or gross misconduct in the practice of medicine. Even assuming, however, that RCW 4.24.250 does apply to a Review Committee functioning in that manner, the statute by its terms does not apply to prohibit discovery where there is a recommendation of the committee involving clinical or staff privileges."

employees who may be hurt by the action of a review committee would have access to all committee records. The statute is addressed primarily to hospital evaluation committees where a doctor's hospital, clinical and staff privileges would be potentially terminated.

Since we conclude Dr. Ragland did not have the right to access the SCMS committee's peer review records, we do not discuss the other contentions.

The summary dismissal of the action for damages is affirmed and the order granting discovery in the declaratory judgment action is reversed.

MUNSON and SHIELDS, JJ., concur.